# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE:  ASBESTOS PRODUCTS | ) | MDL DOCKET NO. MDL 875 |
| LIABILITY LITIGATION (No. VI) | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO | ) | |
| | ) | |

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL J. LINDEMANN, | ) | E.D. Pa. No. 2:07-cv-63080-JG |
| Administrator of the Estate of GEORGE W. | ) | |
| LINDEMANN, Deceased, | ) | |
| | ) | |
| Plaintiff, | ) | Transferor District Court: |
| | ) | W.D. Pa. 06-0024 |
| v. | ) | |
| | ) | |
| FOSTER-WHEELER CORPORATION, et | ) | |
| al. | ) | |
| | ) | |
| Defendants. | ) | |

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL J. LINDEMANN,** | ) | **E.D. Pa. No. 2:07-cv-63080-JG** |
| **Administrator of the Estate of GEORGE W.** | ) | |
| **LINDEMANN, Deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Transferor District Court:** |
| | ) | **W.D. Pa. 06-0024** |
| **v.** | ) | |
| | ) | |
| **FOSTER-WHEELER CORPORATION, et** | ) | |
| **al.** | ) | |
| | ) | **MDL DOCKET NO. MDL 875** |
| **Defendants.** | ) | |

## MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Defendant, OHIO EDISON COMPANY, by its undersigned attorneys, files the within MOTION FOR SUMMARY JUDGMENT, on the grounds set forth herein and in more detail in the BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, incorporated herein by reference as if fully set forth below.

## STATEMENT OF FACTS

Plaintiff, Michael J. Lindemann, as executor of the estate of George W. Lindemann, filed this action against numerous defendants, including this Defendant, Ohio Edison Company (hereinafter "Ohio Edison"), alleging that George W. Lindemann, deceased, suffered personal injury as a result of exposure to asbestos dust and asbestos fibers. Specifically, in his Complaint, Plaintiff alleges that the decedent worked as a union laborer out of Laborers' Local 833 from 1974 until 1988, and that during that time he was exposed to asbestos dust and asbestos fibers while working at the Bruce Mansfield Power Plant (hereinafter "the Plant") in Shippingport, Pennsylvania. (See Plaintiff's Complaint, ¶ 23). Plaintiff also alleges that the

decedent was exposed to asbestos while in the U.S. Navy onboard the U.S.S. John King and the

U.S.S. Yosemite from 1957 to 1962. (Plaintiff's Complaint, ¶ 23). Plaintiff further alleges that

the decedent's exposure to the asbestos dust and asbestos fibers ultimately caused mesothelioma,

which was allegedly diagnosed on February 7, 2005, and his death, on June 28, 2005.

(Plaintiff's Complaint, ¶¶ 24 & 29).

Plaintiff has alleged in his Complaint that Ohio Edison owned and/or operated the Plant,

and set forth in his Complaint allegations of negligence based on premises liability theories.

Specifically, Plaintiff has alleged that Ohio Edison owned and/or operated a premises that was

unsafe due to a latent hazardous condition, (i.e., transportable asbestos fibers), which Ohio

Edison knew or should have known existed on the premises, and that Ohio Edison negligently

failed to comply with its duty owed to the decedent as an alleged business invitee, to maintain

the premises in a reasonably safe condition and/or to warn or protect the decedent against the

alleged dangers on the premises. (Plaintiff's Complaint, ¶ 27).

## GROUNDS FOR SUMMARY JUDGMENT

## OHIO EDISON IS NOT A PROPER PARTY TO THIS LAWSUIT

1.     **Ohio Edison is not a proper party to this lawsuit**.  There is no evidence that

Ohio Edison, as part owner of the Plant, had any possessory interest in the Plant, and thus,

Plaintiff has failed to produce evidence of facts essential to his cause of action. Ohio Edison, at

most, is an out-of-possession part owner of the plant and, therefore, under clearly-established

Pennsylvania law, cannot be liable to the plaintiff for any alleged harm he may have sustained.

2.      Assuming, arguendo, that this Honorable Court finds that Ohio Edison is a proper party to this lawsuit, Ohio Edison is not liable for injuries to employees of independent contractors, and had no duty to warn the decedent of the potential hazards of asbestos.  Neither the "superior knowledge", nor the "peculiar risk" exceptions to the general rule of non-liability of a premises owner or operator for injury to an employee of an independent contractor are applicable here.

3.      Plaintiff has not identified any product manufactured or supplied by Ohio Edison.

WHEREFORE, Ohio Edison Company respectfully requests that this Honorable Court grant summary judgment in its favor on all claims.


Respectfully submitted,

ZIMMER KUNZ, PLLC


By: _/s/ Alexander P. Bicket_____
     ALEXANDER P. BICKET, ESQUIRE
     Pa. I.D. # 53428
     3300 U.S. Steel Tower
     Pittsburgh, PA 15219
     412-281-8000
     Attorneys for Defendant:
     OHIO EDISON COMPANY

# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI)          CIVIL ACTION NO.: MDL 875

### This Document Relates To:

### UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF PENNSYLVANIA

Michael J. Lindemann, Executor of the          E.D. Pa. No. 2:07-cv-63080-ER
Estate of GEORGE W. LINDEMANN,                Civil Action No. 06-00244
JR., deceased

**V.**

FOSTER WHEELER CORPORATION,
et al.

### BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, Ohio Edison Company, by its undersigned attorneys, files the within BRIEF

IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, stating as follows:

### STATEMENT OF FACTS

Plaintiff, Michael J. Lindemann, as executor of the estate of George W.

Lindemann, filed this action against numerous defendants, including this Defendant, Ohio

Edison Company (hereinafter "Ohio Edison"), alleging that George W. Lindemann, deceased,

suffered personal injury as a result of exposure to asbestos dust and asbestos fibers.  Specifically,

Plaintiff alleges that the decedent worked as a union laborer out of Laborers' Local 833 from

1974 until 1988, and that during that time he was exposed to asbestos dust and asbestos fibers

while working as a laborer on a maintenance contract at the Bruce Mansfield Power Plant

(hereinafter "the Plant"), in Shippingport, Pennsylvania.   (See Plaintiff's Complaint, ¶ 23).

Plaintiff also alleges that the decedent was exposed to asbestos while in the U.S. Navy onboard

the U.S.S. John King and the U.S.S. Yosemite from 1957 to 1962.  (Plaintiff's Complaint, ¶ 23).

Plaintiff further alleges that the decedent's exposure to the asbestos dust and asbestos fibers

ultimately caused mesothelioma, which was allegedly diagnosed on February 7, 2005, and his

death, on June 28, 2005.  (Plaintiff's Complaint, ¶¶ 24 & 29).

Plaintiff has alleged in his Complaint that Ohio Edison owned and/or operated the Plant

and set forth in his Complaint allegations of negligence based on premises liability theories.

Specifically, Plaintiff has alleged that Ohio Edison owned and/or operated a premises that was

unsafe due to a latent hazardous condition, (i.e., transportable asbestos fibers), which Ohio

Edison knew or should have known existed on the premises, and that Ohio Edison negligently

failed to comply with its duty owed to the decedent as an alleged business invitee, to maintain

the premises in a reasonably safe condition and/or to warn or protect the decedent against the

alleged dangers on the premises.  (Plaintiff's Complaint, ¶ 27).

In support of his contentions, Plaintiff has produced the testimony of David Freed, a

former co-worker of the decedent.  Mr. Freed is the only individual that has provided testimony

that the decedent even worked at the Plant.  Specifically, Mr. Freed testified that he worked with

the decedent at the Plant in 1975 for approximately two months on a three-man laborer crew.

(*See* Deposition of David Freed, attached hereto as Exhibit A, at 9, 14, and 31).  Mr. Freed

confirmed that when he worked with the decedent, they were employed by Foster Wheeler, who

had a maintenance contract with the Plant for the maintenance of the Unit One boiler only, and

that the jobs generally fit into the category of clean up.  (Exhibit A, at 16-17, 36).  Mr. Freed

testified that Foster Wheeler hired fitters, iron workers, operators, and laborers to complete the

contract.  (Exhibit A, at 16-17).  Mr. Freed testified that, as a laborer:

> Okay.  We took care of all the labor, clean up, well, naturally the trailers and stuff they used; but on the boiler itself, that was what they worked on maintenance wise, inside and out the boiler both, the whole unit.
>
> It was actually Unit One is what it was, which was the first unit at that time, and we cleaned up everything.  That was our – particularly, our job was clean up and get rid of stuff, you know.

(Exhibit A, at 16).

Mr. Freed testified that during the time he worked with the decedent, he would report

daily to Foster Wheeler's trailer located on the premises of the plant, where he received

instructions as to what work he was to do and how he was to do it from his supervisor, who

worked for Foster Wheeler (Exhibit A, at 32-34); that he obtained all tools and equipment

needed to perform his job from Foster Wheeler (Exhibit A, at 31-33); that he would obtain all

safety equipment from Foster Wheeler (Exhibit A, at 33); that Foster Wheeler had the authority

to direct him to where a respirator if necessary (Exhibit A, at 40); and that Foster Wheeler

arranged and conducted weekly safety meetings in which both he and the decedent participated

(Exhibit A, at 34-35).  According to Mr. Freed, when he worked with the decedent, both of them

also attended monthly union meetings at the union hall, where safety was sometimes discussed.

(Exhibit A, at 38).   Importantly, Mr. Freed testified that during the time he worked with the

decedent, they did not work with any asbestos materials.  (Exhibit A, at 19).  Although Mr. Freed

testified that he is sure that he and the decedent worked around asbestos materials, (Exhibit A, at

19), Mr. Freed could not remember any specific job where he recalls working next to or in the

vicinity of the decedent.  (Exhibit A, at 37).  Furthermore, although Mr. Freed continued to work

at the Plant for 18 years, **he did not recall seeing the decedent at the Plant after 1975**. (Exhibit A, at 31.)

Other than this testimony, Plaintiff has produced documents during discovery that mainly consist of a medical report of Bennet I. Omalu, M.D., M.P.H. dated September 12, 2007, invoices for products and/or materials that are alleged to have been used at the Plant, and affidavits of individuals that allegedly worked at the Plant between 1974 and 1988.  (*See* Plaintiffs' Answers to Interrogatories and Responses to Requests for Production of Documents, attached hereto as Exhibit B).  None of the affidavits mention the decedent by name and Plaintiff has not introduced any evidence that verifies that the decedent actually worked with or around any of the products or materials listed on the invoices.[1]

In its Answer/New Matter, Ohio Edison denies ever operating the Plant.  In fact, although Ohio Edison was a part owner of the Plant from its construction to the present time (*See* Ohio Edison's Answers to Interrogatories, at 5, attached hereto as Exhibit C), discovery reveals that Ohio Edison did not operate or maintain the Plant. (*See* Exhibit C, Ohio Edison's Answers to Interrogatories, at 5; and Exhibit D, Affidavit of John Marconi).  Rather, the Plant was operated by Pennsylvania Power Company (hereinafter, "Penn Power") at all times relevant hereto. (*See* Exhibit C, Ohio Edison's Answers to Interrogatories, at 5; and Exhibit D, Affidavit of John Marconi).

Furthermore, correspondence between representatives of Penn Power and Technical Specifications for the Plant reveal that asbestos material was designed out of all three units at the Plant so that there was no asbestos material used inside the Plant for insulation or other purposes.

---

[1] None of the invoices produced in discovery relate to asbestos-containing materials present at the Plant when Plaintiff's decedent allegedly worked there or evidence asbestos-containing products used by or around the Plaintiff's decedent.  Most, if not all, co-worker affidavits produced by the Plaintiff have no bearing on the decedent's use of or presence around asbestos-containing materials at the Plant.

(See correspondence written by Stephen Feld and William Steele of Penn Power, attached hereto as Exhibit E; and Technical Specifications, attached hereto as Exhibit F).

Ohio Edison has filed this Motion for Summary Judgment because Plaintiff cannot meet his burden of proving that Ohio Edison had any possessory interest in the Plant. Further, even if this Court finds that Plaintiff met that initial burden, Plaintiff has not produced evidence showing that Ohio Edison is liable for injuries to employees of independent contractors or had a corresponding duty to warn the decedent of potential hazards. As such, summary judgment should be entered in favor of Defendant, Ohio Edison.

## STANDARD FOR GRANT OF SUMMARY JUDGMENT

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. *Id.* at 248-249. "In considering the evidence, the court should draw all reasonable inferences against the moving party." *El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by showing - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof."

*Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (quoting *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001)).  Once the moving party has thus discharged its burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in [Rule 56]--set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

## ARGUMENT

### A.  OHIO EDISON IS NOT A PROPER PARTY TO THIS LAWSUIT.

In his Complaint, Plaintiff avers that Ohio Edison owned and/or operated the Plant during the time that the decedent worked there.  Setting forth allegations of negligence based on premises liability principles, Plaintiff alleges that Ohio Edison is negligent because the Plant was unsafe due to a latent hazardous condition, (i.e., transportable asbestos fibers), which Ohio Edison knew or should have known existed on the premises, and that Ohio Edison failed to comply with its duty owed to the decedent as an alleged business invitee, to maintain the premises in a reasonably safe condition and/or to warn or protect the decedent against the alleged dangers on the premises.  (Plaintiff's Complaint, ¶ 27).

In a premises liability claim, such as here, the plaintiff bears the burden of proving, among other factors, the essential element that the defendant was the possessor of the premises at the time of the alleged incident.  *Gutteridge v. A.P. Green Servs.,* 804 A.2d 643 (Pa. Super. 2002), *appeal denied,* 574 Pa. 748, 829 A.2d 1158 (2003).   Under Pennsylvania law, title ownership is not a sufficient basis for premises liability.  *Rudy v. A-Best Products Company,* 870 A.2d 330 (Pa. Super. 2005), *appeal denied*, 584 Pa. 714, 885 A.2d 533 (2005).  Rather, it is the possessor of land that bears responsibility for dangerous conditions that arise on the premises.  *Bloom v. Waste*

*Mgmt. Inc.*, 615 F. Supp. 1002, 1015 (E.D. Pa. 1985), citing *Bagley v. Phila.*, 148 Pa. Super 318,

326, 25 A.2d 579 (1982); *Whitaker v. Hills*, 430 F. Supp. 1389, 1390-91 (E.D. Pa. 1977). The

*Restatement (Second) of Torts*, § 328E defines a possessor of land as one "who is in occupation of

land with intent to control it." In fact, a landowner who lacks control over the operation of a site,

such as one who has no involvement with contractors and no authority to direct operations, cannot

accurately be characterized as the possessor of a site. *Bloom, supra*.

In the case at hand, discovery has revealed that Ohio Edison was a part owner of the Plant

from its construction to the present time. (*See* Ohio Edison's Answers to Interrogatories, at 5,

attached hereto as Exhibit C.) In fact, according to records, at the time of the decedent's alleged

exposures (1974-1988), the Plant was owned by the following entities:

| | |
|---|---|
| Duquesne Light Company | **17.01%** |
| The Cleveland Electric Illuminating Company | **19.86%** |
| Ohio Edison Company | **44.97%** |
| Pennsylvania Power Company | **5.76%** |
| The Toledo Edison Company | **12.40%** |

(*See* Exhibit D, Affidavit of John Marconi). However, despite its partial ownership interest, it is

clear that Ohio Edison did not operate or maintain the Plant. (*See* Exhibit C, Ohio Edison's

Answers to Interrogatories, at 5; and Exhibit D, Affidavit of John Marconi). Rather, to the best of

this Defendant's knowledge, the Plant was operated by Pennsylvania Power Company (hereinafter,

"Penn Power") at all times relevant hereto. (*See* Exhibit C, Ohio Edison's Answers to

Interrogatories, at 5; and Exhibit D, Affidavit of John Marconi).

Plaintiff has not produced any evidence to support its allegation that Ohio Edison did in

fact operate the Plant at the relevant times. Rather, the only evidence Plaintiff has introduced

regarding operations and possession is from David Freed, the decedent's co-worker, and he testified that he was not sure whether Ohio Edison or Penn Power operated the Plant in 1975 (Exhibit A, at 32).  Clearly Plaintiff is relying on the fact that Ohio Edison had a limited ownership interest in the Plant to support his claim for premises liability.  However, the law is well settled in Pennsylvania that ownership alone is insufficient to form the basis for a premises liability claim.

In fact, in *Rudy, supra,* the Pennsylvania Superior Court rejected the plaintiffs' argument that five defendants, who only had an ownership interest in the Three Mile Island Power Station, could be held liable for injury from alleged asbestos exposure on the site.  The court held:

> *Gutteridge* teaches that, in order for premises liability to attach, Appellants must first establish that the TMI Defendants were in fact *possessors* of the TMI site.  A possessor of land is one "who is in occupation of land with intent to control it." *Restatement (2d) of Torts,* § 328E.

*Rudy, supra,* at 334 (emphasis in original).

The Plaintiff here has not, and cannot, produce any evidence to establish that Ohio Edison had any possessory interest in the Plant, where the decedent is alleged to have worked.  Faced with the same lack of evidence in *Rudy,* the Pennsylvania Superior Court affirmed the grant of summary judgment, holding:

> Summary judgment is appropriate if the *plaintiff,* as the party with the burden of proof at trial, "has failed to produce evidence of facts essential to the cause of action [.]"  Pa.R.C.P. 1035.02.  In other words, the TMI Defendants are entitled to simply point to Appellants' lack of evidence on a critical fact.  *Id.*
>
> This is precisely what the TMI Defendants did.  They pointed to Appellants' failure to present any evidence that they were possessors.  Under the circumstances of this case, possession is an essential element of premises liability.  *Gutteridge.*  Appellants' failure to present competent evidence on this point entitles these defendants to summary judgment.

*Rudy, supra,* at 334, n. 4 (emphasis in original).

Similarly here, in the absence of any evidence that Ohio Edison was the possessor of the Plant, where the decedent allegedly worked, at the time he is alleged to have worked at the plant, or that Ohio Edison ever had control over the operation of the facility, its employees, or day-to day operations, Ohio Edison cannot, as a matter of law, be responsible for allegedly dangerous conditions on the premises.   Therefore, Ohio Edison is not a proper part to this lawsuit and summary judgment should be entered in favor of Ohio Edison.

B. **OHIO EDISON, AS AN OUT-OF POSSESSION OWNER, OWED NO DUTY TO PLAINTIFF'S DECEDENT, AS AN EMPLOYEE OF AN INDEPENDENT CONTRACTOR.**

Even if this Honorable Court finds that Ohio Edison is a proper party to this lawsuit, there is no evidence that Ohio Edison had, or breached, any duty to the Plaintiff's decedent, which is a necessary element of any negligence action.   Ohio Edison makes the following arguments in the event that this Court should somehow find that there is evidence that Ohio Edison's interest in the Plant was sufficient to confer possessor status upon it.

Under Pennsylvania law, a possessory interest alone does not impose a duty upon a land owner to maintain a reasonably safe work place, or to warn Plaintiff's decedent of dangerous conditions existing on the premises. *Rudy v. A-Best Products Company, et al.*, *supra.*  Rather, the standard of care a possessor of land owes to one who enters upon the land depends upon whether the latter is a trespasser, licensee, or invitee.   *Emge v. Hagosky*, 712 A.2d 315, 317 (Pa.Super.1998).   In similar cases, courts have found that employees of independent contractors are "invitees" who fall within the classification of "business visitors."  *Darrah v. Jones & Laughlin Steel Corporation*, 397 Pa. 334, 338, 155 A.2d 201, 202 (1959); *Straight v. B.F. Goodrich Co.*, 354 Pa. 391, 394, 47 A.2d 605, 606 (1946).  As referenced above, Plaintiff has not

presented any evidence to prove that the decedent worked at the Plant, with the exception of the testimony of David Freed, who only remembered working with the decedent at the Plant in 1975 for approximately two or three months. (*See* Deposition of David Freed, attached hereto as Exhibit A, at 9, 14, and 31). However, considering that evidence in a light most favorable to the Plaintiff, as this Court will do when reviewing this Motion for Summary Judgment, but without waiving any arguments to the contrary, Defendant, for purposes of this Motion and argument, will treat the decedent as a business invitee.

Whether a possessor of land owes a duty of care to a business invitee, such as the decedent, is a question of law for the court to determine rather than the trier of fact. *Brisbine v. Outside In School of Experiential Education, Inc.*, 799 A.2d 89 (Pa. Super. 2002), *petition for allowance of appeal denied*, 572 Pa. 746, 816 A.2d 1101 (2003). The general rule is that a property possessor is not liable for injuries sustained by employees of independent contractors who are on the premises to perform work for the owner. *Wilk v. Haus*, 460 A.2d 288, 293 (Pa. Super. 1983). Further, one who engages the services of an independent contractor is not liable for physical harm to another caused by an act or omission of the contractor or his servants. *Brletich v. U.S. Steel Corp.*, 445 Pa. 525, 285 A.2d 133 (1971); *Thomas v. Philadelphia*, 668 A.2d 292, 295 (Pa. Cmwlth. 1995); *Ortiz v. Ra-El Development Corp.*, 528 A.2d 1355 (Pa. Super.1987), *petition for allowance of appeal denied*, 517 Pa. 608, 536 A.2d 1332 (1987); *Lutz v. Cybularz*, 607 A.2d 1089 (Pa. Super. 1992); *Restatement (Second) of Torts,* § 409 (1965), adopted in *Hader v. Coplay Cement Mfg. Co.*, 410 Pa. 139, 189 A.2d 271 (1963).

This policy charges the contractors with the duty of assuring the health and safety of their own employees, and insulates the property possessor from liability to employees of independent contractors arising from a breach of that duty. Independent contractors are in a position superior

to that of property possessors because the independent contractors are in control of the work and have expertise in the performance of their work and knowledge of their products. *Mentzer v. Ognibene*, 597 A.2d 604, 609 (Pa. Super. 1991), *petition for allowance of appeal denied*, 530 Pa. 660, 609 A.2d 168 (1991); *Mathis v. Lukens Steel Company*, 415 Pa. 262, 203 A.2d 482 (1964).

## 1. OHIO EDISON DID NOT RETAIN CONTROL OVER WORK PERFORMED BY EMPLOYEES OF INDEPENDENT CONTRACTORS.

Pennsylvania courts recognize that an owner, who has entrusted the responsibility for certain work to a qualified contractor, justifiably depends upon the independent contractor's expertise.  When the landowner "turns the work over to an independent contractor with experience and know-how, who selects his own equipment and employees, the possessor of land has no further liability in connection with the work to be done." *Edward v. Commonwealth of Pennsylvania, Department of Transportation*, 546 A.2d 1291, 1294 (Pa. Cmwlth. 1988).  An independent contractor "is in possession of the necessary area occupied by the work contemplated under the contract, and his responsibility replaces that of the owner who is, during the performance of the work by the contractor, out of possession and without control over the work or the premises." *Colloi v. Philadelphia Electric Co.*, 481 A.2d 616 (Pa. Super. 1984). Therefore, the possessor of land is not liable for harm resulting from the independent contractor's breach of the duty of care owed to its employees. *Mathis v. Lukens Steel Company*, *supra*.

The evidence of record conclusively establishes that the possessor and operator of the Plant did not retain control over the work performed by Plaintiff's decedent.  As indicated above, David Freed, a former co-worker of the decedent, testified that he worked with the decedent at the Plant in 1975 for approximately two months on a three-man laborer crew doing clean up work.  (Exhibit A, at 9, 14, and 31).  Mr. Freed confirmed that both he and the decedent were employed by Foster Wheeler, which, at that time, had a maintenance contract at the Plant only

for the Unit One Boiler. (Exhibit A, at 16-17, 36).  He testified that during this time, he would report daily to Foster Wheeler's trailer located on the premises of the plant, where he received instructions as to what work he was to do and how he was to do it from his supervisor, who worked for Foster Wheeler (Exhibit C, at 32-34); that he obtained all tools and equipment needed to perform his job from Foster Wheeler (Exhibit C, at 31-33); that he would obtain all safety equipment from Foster Wheeler (Exhibit C, at 33); that Foster Wheeler had the authority to direct him to wear a respirator if necessary (Exhibit C, at 40); and that Foster Wheeler arranged and conducted weekly safety meetings in which both he and the decedent participated (Exhibit C, at 34-35).

As to Ohio Edison's involvement, Mr. Freed testified that he was not sure whether Ohio Edison or Penn Power operated the Plant in 1975 (Exhibit C, at 32); however, he testified that, "[a]ll of the orders and jobs came from either Ohio Edison or whoever was there down to Foster Wheeler, and Foster Wheeler supervisors would turn around and give it to the crews which it belonged to, in other words, if it was a fitter or laborer, boiler maker, whatever."  (Exhibit C, at 26-27).  He testified that there were employees of the Plant working on Unit One when he was there during the two-to-three month period, but that they were not working with, or for, the Foster Wheeler employees, and that he had no knowledge as to whether any of those individuals were using asbestos materials.  (Exhibit C, at 27-28).

Thus, in this case, at all relevant times, Foster Wheeler was in possession of the necessary area occupied by the work contemplated under the maintenance contract, and its responsibility replaced that of the owners of the Plant, who were, during the performance of the work by Foster Wheeler, out of possession and without control over the work or the premises.

Furthermore, the owner or possessor of land is not liable for harm to employees of an independent contractor even where the owner or possessor retains the right to monitor or inspect the independent contractor's work, *Hader v. Coplay Cement Mfg. Co.*, 410 Pa. 139, 189 A.2d 271 (1963), or where the owner includes safety requirements in the contract*, LaChance v. Michael Baker Corp.,* 869 A.2d 1054 (Pa. Cmwlth. 2005).  In *Hader,* the Pennsylvania Supreme Court held, "it is normal for an owner or interested party to visit the scene of new construction to observe the progress of work.  Such inspections of finished work furnish no evidence of a right to control the workmen … [but] only an interest in the result to be obtained." *Hader,* 189 A.2d 278.  Thus, in *Hader,* the court found that frequent visits by plant managers were "innocuous" when there was not a "scintilla of evidence that [the plant manager] at any time gave, or attempted to give, any instructions as to the manner of installation." *Id.*

The evidence of record indisputably establishes that the decedent was an employee of Foster Wheeler, an independent contractor, who controlled every aspect of his job performance. In the absence of evidence that the possessor/operator of the Plant retained control over the work performed by the decedent, the general rule of non-liability of the premises owner applies. Therefore, Ohio Edison, if deemed a possessor, owed no duty to the Plaintiff's decedent as a matter of law.

## 2.  THERE IS NO EVIDENCE OF OHIO EDISON'S KNOWLEDGE OF AN UNREASONABLY DANGEROUS CONDITION.

Under Pennsylvania law, the duty of a possessor of property to those who enter its premises as business invitees is rooted in *Restatement (Second) of Torts,* sections 343 and 343(a), as the Superior Court articulated in *Gutteridge v. A.P. Green Services,* 804 A.2d 643 (Pa. Super. 2002) *appeal denied,* 829 A.2d 1158 (Pa. 2003):

> A possessor of land is subject to liability for physical harm caused
> to his invitees by a condition on the land if, but only if, he

    a.  knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

    b.  should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

    c.  fails to exercise reasonable care to protect them against the danger.

*Id.* at 656, *quoting Summers v. Giant Food Stores, Inc.,* 743 A.2d 498, 506 (Pa. Super. 1999) (*en banc), appeal denied,* 764 A.2d 1071 (Pa. 2001).

There is no evidence in the record to establish the first *Gutteridge* prong, i.e., to show that Ohio Edison (if deemed a possessor) knew or reasonably should have known that asbestos-containing products, if any, used at the Plant involved an unreasonable risk of harm.  Rather, the evidence of record indicates that all specifications for use of insulation materials in the Plant were for non-asbestos insulation.   (*See* Correspondence from and to Stephen Feld of Penn Power, attached hereto as Exhibit E; Technical Specifications for the Bruce Mansfield Plant, attached hereto as Exhibit F; and Deposition of David Freed, Exhibit A, at 11.)  Further, when asked, Mr. Freed was not aware of any specific circumstance when he or the decedent would have been working with any asbestos material.  (Exhibit A, 19).  Plaintiff has failed to produce any evidence that Ohio Edison had reason to know of unreasonable dangerous conditions on the premises related to asbestos.  Furthermore, as the final OSHA standards were in existence when the decedent worked at the plant, Ohio Edison, as an electric utility company, reasonably believed that any exposure below the permissible exposure limit established by OSHA was not unreasonably dangerous.  *See Karjala v. Johns-Manville Corp.*, 523 F. 2d 155 (8th Cir. 1975).  Because there is no evidence in the record to establish that Ohio Edison (if deemed a possessor) had either actual or constructive knowledge of any unreasonably dangerous condition upon the

premises during the period of the decedent's alleged exposure, summary judgment is appropriate as to Plaintiff's premises liability claim.

### 3. OHIO EDISON REASONABLY WOULD HAVE EXPECTED INDEPENDENT CONTRACTORS AND THEIR EMPLOYEES TO REALIZE THE POTENTIAL DANGER OF ASBESTOS AND PROTECT AGAINST IT.

There is also no evidence to establish the second *Gutteridge* prong, i.e., to prove that Ohio Edison (if deemed a possessor) should have expected that Plaintiff's decedent and his employer would not realize the potential hazards of asbestos and protect against it.

As indicated above, Plaintiff's decedent was employed by Foster Wheeler during the time he allegedly worked at the Plant.  (*See* Deposition of David Freed, Exhibit A, at 16-17).  In 1971, OSHA was enacted which contained an emergency standard, applicable to EMPLOYERS, and designed to protect EMPLOYEES such as George Lindemann from the alleged dangers of asbestos. In addition, Plaintiff's decedent was a member of the Laborers Local 833 from 1974 until 1988. (Plaintiff's Complaint, ¶ 23).  Attached hereto as Exhibit G is a copy of documents from the National Safety Council (hereinafter, "NSC"), indicating that the decedent's employer at the time he allegedly worked at the Plant, Foster Wheeler, has been a member of the NSC since March 1945 and had officers on the construction section of the NSC in 1956-57 and 1961-62.   Attached hereto as Exhibit H is a copy of documents from the NSC indicating that the decedent's union, Laborers' International Union of North America – AFL-CIO, was a member of the construction section of the NSC and had officers on the construction section in 1965-66, 1966-67, and 1968-69.

Robert Joseph Marecek, the manager of the NSC library, has indicated that the NSC is a not-for-profit membership driven organization that has been in existence since 1913 that deals with accident prevention, safety and health in all walks of life.   (*See* Deposition Transcript of

Robert Joseph Marecek, incorporated herein and attached hereto as Exhibit I, at 24-25). According to Mr. Marecek, with approximately 17,000 organizational and business members, the NSC provides publications on safety and health to its members, (Exhibit I, at 25), and stores copies of books, publications, and periodicals on those topics at its library in Itasca, Illinois, which has been in existence since 1915, to which all NSC members and the general public have access. (Exhibit I, at 27-30).   The NSC began publishing the National Safety News in 1919, which deals with a variety of safety topics and is accessible and disseminated to all NSC members.  (Exhibit I, at 32-33, 100). The NSC also has an annual meeting called the National Safety Congress that is held each year, where NSC members and safety and health professionals attend presentations and panel discussions on safety and health issues.  (Exhibit I, at 34-35).

According to Mr. Marecek, articles pertaining to the hazards of asbestos and related diseases were available to members of the NSC beginning in the 1920s.  (Exhibit I, at 82-83).  In fact, attached to Mr. Marecek's deposition transcript as Exhibits 3 and 4, are catalogs of numerous articles regarding asbestos, occupational hazards related to asbestos, and other similar diseases that would have been available to all NSC members.   In addition, according to Mr. Marecek, the NSC published and publishes a job safety manual that was and is frequently disseminated to unions.  (Exhibit I, at 94).

As both Foster Wheeler and the Laborers' International Union of North America were members of the NSC prior to the time period of the decedent's alleged exposure, it is clear that they were aware of the potential hazards of work place exposure to asbestos at the time the Plaintiff's decedent was allegedly working at the Plant.

In addition, David Freed, the decedent's former co-worker, testified that when he worked with the decedent both of them attended monthly union meetings at the union hall, where safety

was sometimes discussed, although he did not remember a presentation on asbestos in 1975. (Exhibit A, at 38).  Mr. Freed did recall that everyone in the union received quarterly newsletters published by the Laborers' District Council in Pittsburgh wherein safety was discussed. (Exhibit A, at 38-39).  Mr. Freed also testified to having weekly safety meetings while working at the Plant conducted by a union steward or a supervisor for Foster Wheeler (Exhibit A, 34).  Mr. Freed acknowledged that he would obtain all safety equipment from Foster Wheeler (Exhibit A, at 33); that Foster Wheeler had the authority to direct him to where a respirator if necessary (Exhibit A, at 40); and that when he worked with the decedent doing clean-up work, and it was going to be dusty or dirty, they were given the option and opportunity to wear dust masks or respirators (Exhibit A, 44-45).  Mr. Freed also testified that in 1975, during the time he worked with the decedent, he recalled warnings and danger signs concerning asbestos materials being used around gaskets if a valve was being changed, (Exhibit A, at 28), and that asbestos, "…was just getting into knowledge and that I guess at that time."  (Exhibit A, at 28-29).

Thus, the evidence establishes that the Plaintiff's decedent, his employer, and his union had access to a wealth of information regarding the potential hazards of work place exposure to asbestos by the early 1970s.  Therefore, Ohio Edison would not have acted unreasonably in expecting that an independent contractor and its employees would realize the potential danger of asbestos exposure and protect against it.  *Phillips v. A.P. Green Refractory Co.,* 630 A.2d 874 (Pa. Super. 1993), *affirmed by Phillips v. A-Best Products Company,* 542 Pa. 124, 665 A.2d 1167 (1995).

Because the Plaintiff cannot meet the first two *Gutteridge* prongs, Ohio Edison would not have had a duty to protect or warn the Plaintiff's decedent of the potential hazards of asbestos, and therefore, the Plaintiff can also not meet the third *Gutteridge* prong.

C. **NEITHER THE "SUPERIOR KNOWLEDGE" NOR THE "PECULIAR RISK" EXCEPTIONS ARE APPLICABLE HERE.**

Again, it is clear that Ohio Edison did not have a possessory interest in the Plant when the Plaintiff is alleging his decedent worked at the Plant. However, Ohio Edison makes the following arguments in the event that this Court should somehow find that there is evidence that Ohio Edison's interest in the Plant was sufficient to confer possessor status upon it.

There are two exceptions to the general rule of non-liability of the property owner and possessor, which are: (1) if the property owner or possessor had superior knowledge of the dangers of asbestos in the workplace; or (2) if the hazards present in the work place posed a peculiar risk. As exceptions to the general rule, the "superior knowledge" and "peculiar risk" doctrines must be viewed narrowly. *Edwards v. Franklin & Marshall College,* 663 A.2d 187, 190 (Pa. Super.1995). On the record in this case, both of these exceptions fail as a matter of law. The first exception does not apply because there is no evidence that Ohio Edison (if deemed a possessor) had superior knowledge of the potential dangers of asbestos. The second exception does not apply because the hazard of asbestos exposure was not a risk peculiar to, or different from, that normally associated with the decedent's work.

1. **There is No Evidence that Ohio Edison Had Superior Knowledge of the Potential Hazards of Asbestos.**

In *Gutteridge, supra.*, the court addressed the "superior knowledge" doctrine, as follows:

> An owner of land who delivers temporary possession of a portion of the land to an independent contractor owes no duty to the employees of the independent contractor with respect to an obviously dangerous condition on that portion of the land in the possession of the contractor. [citing *Colloi v. Philadelphia Electric Co.,* 332 Pa. Super. 284, 481 A.2d 616 (1984).] Furthermore, the employer of an independent contractor has no duty to warn either the contractor or his employees of a condition that is at least as

> obvious to them as it is to him. [*Id*]  The question of whether a
> landowner owes a duty to warn an independent contractor of
> dangerous conditions on the premises turns on whether the owner
> possess "superior knowledge" or information which places him in
> a better position to appreciate the risk posed to the contractor or his
> employees by the dangerous conditions. [*Id.*]

In addition, as the Pennsylvania Supreme Court has observed, the independent contractor

is generally in a better position than the owner or possessor of land to appreciate the hazards of

its work and provide for the safety of its employees:

> [L]ogically, safety responsibility best rests on the subcontractor
> doing the work, for that party is most familiar with the work and its
> particular hazards.  As we stated in Hader v. Coplay Cement Mfg.
> Co., 410 Pa. at 151, 189 A.2d at 277 (quoting Silveus v. Grossman,
> 307 Pa. 272, 278, 161 A.2d 362, 364 (1932)), 'How can the other
> party control the contractor who is engaged to do the work and
> who presumably knows more about doing it than the man who by
> contract authorized him to do it?  Responsibility goes with
> authority.'  Thus, a subcontractor who undertakes a task is in the
> best position to provide for the safe accomplishment thereof, and
> delegation of safety responsibility to that subcontractor does not
> deviate from the contractor's duty.

*Leonard v. Commonwealth*, 565 Pa. 101, 771 A.2d 1238, 1242 (2001).

The case of *Rudy v. A-Best Products Company, et al., supra,* is directly on point with this

case.  In *Rudy,* the Plaintiff worked as a plumber/pipe fitter at the Three Mile Island Power

Station, where he claimed to have been exposed to asbestos.  Rudy sued the owners of the power

station for failure to provide a safe work environment, and failure to warn of the potential

hazards of asbestos.  In *Rudy*, because the plaintiff was unable to prove that several of the owner-

defendants had a possessory interest, as here, summary judgment was granted in their favor.

However, the court continued to analyze Plaintiff's case against one defendant, who admitted

was the possessor of the land.  Because the Plaintiff was unable to meet the three *Gutteridge*

prongs, the court went on to consider whether the "superior knowledge" or "peculiar risk"

exceptions might be applicable to the power station owners.  In rejecting the argument that the

power station owners had "superior knowledge" of the potential hazards of asbestos, the court noted that the premises owners had "presented evidence that Rudy also had substantial knowledge of asbestos hazards through his union, employers, and co-workers."[2]

Ignoring, for the moment, the evidence of record in the case at hand, which disputes whether asbestos actually existed in the work area of the decedent (*See* Correspondence from and to Stephen Feld of Penn Power, attached hereto as Exhibit E; Technical Specifications for the Bruce Mansfield Plant, attached hereto as Exhibit F; and Deposition of David Feed, Exhibit A, at 11, 19, and 37), Plaintiff has failed to produce any evidence that Ohio Edison had knowledge of the potential hazards of asbestos that was superior to that of the Plaintiff's decedent, his employers, or union.   Rather, the evidence shows that Plaintiff's decedent worked for Foster Wheeler, which, *inter alia*, manufactured boilers for generation plants, and which had been a member of the NSC since 1945.  (*See* Exhibit G).  In addition, the decedent was a member of the local laborer's union, which was also a member of the NSC, at least in the years prior to the periods of alleged asbestos exposure at the Plant.  (See Exhibit H).  Thus, Plaintiff cannot argue that Ohio Edison's membership in the NSC vested it with "superior knowledge" of the potential hazards of asbestos.

In addition, David Freed, the decedent's former co-worker, testified that when he worked with the decedent both of them attended monthly union meetings at the union hall, where safety was sometimes discussed, although he did not remember a presentation on asbestos in 1975.

---

[2] Also instructive is *Donald W. Kooser, Executor of the Estate of Wendell L. Kooser, Deceased v. Aalborg Industries, Inc. et al.,* 152 PLJ 109 (2004), where the evidence included an expert report that premises defendants, by virtue of their membership in the National Safety Council, had knowledge of the potential hazards of asbestos superior to that of the plaintiff. The trial court granted summary judgment to the premises defendants, finding that the expert report did no more than outline knowledge that was generally available and accessible to other interested members of the public, and did not demonstrate knowledge superior to that available to workers through their unions and employers.

(Exhibit A, at 38).  Mr. Freed did recall that everyone in the union received quarterly newsletters published by the Laborers' District Council in Pittsburgh wherein safety was discussed. (Exhibit A, at 38-39).  Mr. Freed also testified to having weekly safety meetings while working at the Plant conducted by a union steward or a supervisor for Foster Wheeler (Exhibit A, 34).  Mr. Freed acknowledged that he would obtain all safety equipment from Foster Wheeler (Exhibit A, at 33); that Foster Wheeler had the authority to direct him to where a respirator if necessary (Exhibit A, at 40); and that when he worked with the decedent doing clean-up work, and it was going to be dusty or dirty, they were given the option and opportunity to wear dust masks or respirators (Exhibit A, 44-45).  Mr. Freed also testified that in 1975, during the time he worked with the decedent, he recalled warnings and danger signs concerning asbestos materials being used around gaskets if a valve was being changed, (Exhibit A, at 28), and that asbestos, "…was just getting into knowledge and that I guess at that time."  (Exhibit A, at 28-29).

Inherent in the concept of "superior knowledge" is a comparison or weighing of the knowledge of one party against that of another.  *Rudy, supra.*  As in *Rudy,* there is no evidence here that Ohio Edison (if found to have a possessory interest in the Plant) had knowledge of the dangers of asbestos before the decedent, his union, or his employers did, and certainly no evidence that Ohio Edison had knowledge that was *superior* to that of the decedent, his union and employers.  Because Plaintiff will be unable to establish that Ohio Edison possessed knowledge superior to that of the decedent, his employers, or union, as to the dangers posed by asbestos in the workplace, summary judgment should be entered in favor of Ohio Edison.

---

*See* also: *Chenot v. A.P.  Green Services, Inc.,* 895 A.2d 55 (Pa. Super. 2006) (citing to *Rudy* holding with approval: "summary judgment was proper where a landowner presented evidence that plaintiff also had substantial

## 2.   Asbestos Exposure was not a "Peculiar Risk" to the Decedent's Work as a Laborer.

Another exception to a property owner's non-liability is that the owner may have a duty to warn or protect an employee of an independent contractor where the work to be performed involves a special danger or peculiar risk.  A "peculiar risk" exists when: 1) a risk is foreseeable to the employer of an independent contractor at the time the contract is executed (that is, if a reasonable person in the position of the employer would foresee the risk and recognize the need to take special measures); and 2) the risk is different from the usual and ordinary risk associated with the general type of work done (that is, the specific project or task chosen by the employer involves circumstances that are substantially out-of-the-ordinary).  *Ortiz v. Ra-El Development Corp.,* 528 A.2d 1355, 1358 (Pa. Super. 1987).

First, as discussed above, there is no evidence to satisfy the requirement that Ohio Edison should have foreseen the risks of asbestos as the Plant was constructed to be free of asbestos insulation materials.  (*See* Exhibit E and Exhibit F).  Second, Plaintiff is unable to establish the second requirement of the "peculiar risk" exception, i.e., that the risk is different from the usual and ordinary risks associated with the general type of work done by the employee of the independent contractor.   In *Mentzer v. Ognibene*, 597 A.2d 604, 611 (Pa. Super. 1991), the Superior Court noted:

> Merely because a job involves some risk of harm does not mean that the risk is necessarily peculiar.  Every type of construction work involves a variety of risks of harm which are viewed by those engaged in the trade as normal incidents of the occupation.  In order for the liability concepts involving contractors to retain any meaning, especially in industries such as construction where almost every job task involves the potential for injury unless ordinary care is exercised, peculiar risk situations should be viewed narrowly as any other exception to a general rule is usually viewed.

knowledge of asbestos hazards through his union, employers and co-workers").

*Id.*, 597 A.2d at 611, citing *Marshall v. SEPTA*, 587 F. Supp. 258, 264 (E.D. Pa. 1984).

Plaintiff alleges that the decedent was a laborer who regularly worked with and around asbestos-containing products from 1974 to 1988. (Complaint, ¶ 23). In fact, the decedent's co-worker, David Freed, testified that he and the decedent were hired as laborers by Foster Wheeler, who was hired to maintain the boiler in Unit One of the Plant. (Exhibit A, at 16-17). Mr. Freed testified that Foster Wheeler was a boiler manufacturing company that hired fitters, iron workers, operators, and laborers to complete the contract. (Exhibit A, at 16-17). He clarified the duties as a laborer:

> Okay. We took care of all the labor, clean up, well, naturally the trailers and stuff they used; but on the boiler itself, that was what they worked on maintenance wise, inside and out the boiler both, the whole unit.
>
> It was actually Unit One is what it was, which was the first unit at that time, and we cleaned up everything. That was our – particularly, our job was clean up and get rid of stuff, you know.

(Exhibit A, at 16). Mr. Freed also testified to having weekly safety meetings while working at the Plant conducted by a union steward or a supervisor for Foster Wheeler (Exhibit A, 34). Mr. Freed acknowledged that he would obtain all safety equipment from Foster Wheeler (Exhibit A, at 33); that Foster Wheeler had the authority to direct him to where a respirator if necessary (Exhibit A, at 40); and that when he worked with the decedent doing clean-up work, and it was going to be dusty or dirty, they were given the option and opportunity to wear dust masks or respirators (Exhibit A, 44-45). Mr. Freed also testified that in 1975, during the time he worked with the decedent, he recalled warnings and danger signs concerning asbestos materials being used around gaskets if a valve was being changed, (Exhibit A, at 28), and that asbestos, "…was just getting into knowledge and that I guess at that time." (Exhibit A, at 28-29). Mr. Freed further testified that during the time he worked with the decedent, they did not work with any

asbestos materials, but that he was sure that they worked around asbestos materials, which he was not able to specify. (Exhibit A, at 19). Finally, he testified that the job was dirty and that there was a lot of fly ash and dust around, but that, "You had to wear respirators quite a bit, but they had the safety stuff was there. I mean, it was up to you to put it on, but it was always there." (Exhibit A, at 23).

Plaintiff has not cited to any evidence that the decedents work involved circumstances that were substantially out of the ordinary for a laborer performing maintenance in a boiler area or that potential exposure to asbestos fibers was uncommon for such boiler-related work. The hazard associated with the decedent's job - exposure to asbestos fibers - was precisely the same as that which Plaintiff alleges caused the decedent's injury. As such, the risk was not peculiar, unusual, extraordinary or distinct from that posed by the nature of the work the decedent was performing. In affirming the trial court's grant of summary judgment in *Rudy, supra,* the Superior Court held:

> Appellants cited to no evidence that Rudy's work "involved circumstances which were substantially out of the ordinary [citation to *Mentzer, supra*]. It is understood that Rudy routinely installed and removed asbestos-containing material. In other words, asbestos exposure was a common (albeit serious) risk of Rudy's job. Appellants have failed to point to any aspect of Rudy's job which can be fairly characterized as a "peculiar risk." Appellants do accurately note that asbestos is an inherently dangerous product, but this does not in and of itself establish a *peculiar* risk to someone such as Rudy.

*Rudy, supra,* at 335 (original emphasis). *See also LaChance v. Michael Baker Corp.,* 869 A.2d 1054 (Pa. Cmwlth. 2005) and *Calender v. Allegheny County Sanitary Authority,* 222 A.2d 461 (Pa. Super. 1966) (owner of property does not have a duty to protect employees of independent contractors from risks arising from or created by the job contracted).

Similarly here, the risk of asbestos exposure was inherent in the job performed by the decedent.  Therefore, the "peculiar risk" exception to the general rule of non-liability of the premises owner and possessor does not apply to render Ohio Edison liable for the injuries to the Plaintiff's decedent as an employee of an independent contractor.

### D. PLAINTIFF HAS NOT IDENTIFIED ANY PRODUCT MANUFACTURED OR SUPPLIED BY OHIO EDISON

According to certain allegations in the Complaint, Plaintiff seeks to recover damages from manufacturers and suppliers of asbestos-containing products to which the decedent was allegedly exposed, causing his injuries.  (Complaint ¶¶ 25 – 36).  Plaintiff asserts a general negligence claim and a strict products liability claim against all defendants who allegedly manufactured and/or supplied asbestos and asbestos-containing products ("product defendants"). (Complaint ¶ 25 - 36).  To prevail against Ohio Edison on either of these claims, Plaintiff must establish that (i) Ohio Edison manufactured or supplied an asbestos containing product, and (ii) such product caused the decedent's injuries.  *See Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975); *Eckenrod v. G.A.F. Corp.*, 544 A.2d 50 (Pa. Super. 1988), *petition for allowance of appeal denied*, 520 Pa. 605, 553 A.2d 968 (1988).

In the Complaint, Plaintiff alleges that Ohio Edison (as well as other Defendants) "was engaged in the business of mining and/or milling and/or manufacturing and/or fabricating and/or supplying and/or selling asbestos-containing products." (Complaint ¶ 25).   Ohio Edison categorically denies this allegation, as set forth in the following section.  However, Plaintiff has failed to identify a single asbestos-containing product manufactured or supplied by Ohio Edison to which the decedent was allegedly exposed.  (*See* Plaintiff's Answers to Short Form Interrogatories, Attached hereto as Exhibit B).  Furthermore, in Pennsylvania, a plaintiff's right

to pursue a claim for an asbestos-related injury is dependent on the plaintiff's ability to present evidence that he worked in the vicinity of asbestos with regularity, and in fact inhaled asbestos fiber produced by a specific manufacturer's product.  *See Eckenrod, supra.*.  In the case at hand, Plaintiff cannot prove any liability on a product-based claim against Ohio Edison because he has failed to produce evidence that Ohio Edison manufactured or supplied any asbestos products, was been in the business of selling asbestos products, that any of the alleged asbestos products created respirable asbestos fibers, and that the decedent worked regularly in its vicinity and inhaled such respirable asbestos.   Therefore, summary judgment should be granted to Ohio Edison on such claims.

> **1.     Ohio Edison did not manufacture or supply any asbestos-containing products, and has never been in the business of selling asbestos-containing products.  Therefore, Ohio Edison cannot be generally or strictly liable on the product-based claims.**

Section 402A of the *Restatement (Second) of Torts* provides that a defendant who sells a product in a defective condition and unreasonably dangerous to the user or consumer may be subject to liability for physical harm caused thereby *if the defendant is engaged in the business of selling such a product.  Restatement (Second) of Torts*, § 402A (1965) (emphasis added).  This section of the Restatement was adopted by the Pennsylvania Supreme Court in *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966).  The cases of *Cafazzo v. Central Medical Health Services, Inc.,* 542 Pa. 526, 668 A.2d 521 (1995) and *Musser v. Vilsmeier Auction Company, Inc.,* 522 Pa. 367, 562 A.2d 279 (1989), make clear that Section 402A applies only to sellers of defective products.  Further, strict liability adheres only in situations where a defective product has been provided by a seller "engaged in the business of selling such a product." *Cafazzo, supra,* at 531, 668 A.2d at 523, *citing Coyle v. Richardson-Merrell, Inc.,* 526 Pa. 208, 212, 584 A.2d 1383, 1385 (1981).

In *Cafazzo, supra,* the Pennsylvania Supreme Court held that a physician and hospital, which purchased prosthetic devices for use in providing medical treatment, could not be held strictly liable for injury arising from defects in the devices because they were not "sellers" of the devices.  The Supreme Court quoted from *Podrat v. Codman-Shurtleff, Inc.,* 558 A.2d 895, 898 (Pa. Super.1989), *petition for allowance of appeal denied,* 524 Pa. 609, 569 A.2d 1368, as follows: Appellees could not be liable under a theory of strict liability because they were not in the business of selling the implant, its use was only incidental to Appellees' primary function of providing medical services, and the medical service could not have been rendered without the use of this product.

In the case at hand, Ohio Edison is an electric utility company engaged in the business of providing electrical power to consumers.  Ohio Edison does not, and never has, manufactured or sold any asbestos-containing products.  In Plaintiffs Answers to Interrogatories and Requests for Production of Documents, attached hereto as Exhibit B, Plaintiff attaches numerous invoices of products that were allegedly delivered to the Bruce Mansfield Plant.  However, it is clear that none of the products were manufactured by or sold by Ohio Edison.  *See* Exhibit B. Furthermore, Plaintiff has not produced any evidence to show that Ohio Edison has ever been in the business of selling asbestos-containing products.  Even if Plaintiff was able to produce evidence that asbestos was present at the Plant in areas where the decedent worked, and that Ohio Edison operated such location, this evidence would establish only that Ohio Edison was a *consumer, not a seller,* of asbestos-containing products.  Thus, there is no evidence identifying an asbestos-containing product manufactured or sold by Ohio Edison to which the decedent was exposed, and Plaintiff has failed to meet his burden of proof that Ohio Edison was in the business

of selling such products.   Accordingly, Plaintiff's product-based claims must fail and Ohio Edison cannot be held strictly or generally liable as sellers of asbestos products.

In the absence of any evidence that Ohio Edison manufactured or sold any asbestos-containing products to which the decedent was exposed, there can be no issue of fact to dispute that Ohio Edison is not a "product defendant," and therefore cannot be liable under the general negligence claim or the strict product liability claim based on the provision of a product.

### E.   PLAINTIFF'S EXEMPLARY AND PUNITIVE DAMAGE COUNT SHOULD BE DISMISSED.

In Count IV of Plaintiff's Complaint, Plaintiff seeks exemplary and punitive damages against all of the defendants, "to punish the defendants for their actions which were willful, wanton, gross and in total disregard of the health and safety of the users and consumers of their products, and also because of the civil conspiracy of all or some of the defendants ...." (Plaintiff's Complaint, ¶¶40-41).   However, in Pennsylvania, there is no separate cause of action for "Gross, Willful and Wanton Misconduct," without first receiving an award for compensatory damages.   *Kirkbride v. Lisbon Contractors,* 521 Pa. 97, 555 A.2d 800 (1989).   As Plaintiff has not sustained his burden of proof with regard to any of the underlying claims against Ohio Edison, Plaintiff's count for exemplary and punitive damages should be dismissed and summary judgment should be entered on behalf of Ohio Edison.

## **CONCLUSION**

Premises liability cannot be imposed upon owners who are not also possessors of the premises.   At no time, either during the decedent's alleged exposure or thereafter, was Ohio Edison in possession of the Plant where the decedent allegedly worked. Therefore, as a matter of law, Ohio Edison cannot be held liable on any premises liability claim.

Without waiving the above argument and defense, or admitting that Ohio Edison has ever had a possessory interest in the Plant, and in the event that this Court should somehow find that there is evidence that Ohio Edison's interest in the Bruce Mansfield Plant was sufficient to confer possessor status upon it, Ohio Edison would still not have a duty to the Plaintiff's decedent to maintain a reasonably safe work place or to warn the decedent about dangerous conditions existing on the premises.   A premises owner or operator does not owe a duty to employees of independent contractors to warn or protect against hazardous conditions on the premises.  Furthermore, there is no evidence that Ohio Edison had knowledge of an unreasonably dangerous condition on their premises, or that they should have expected that employees of independent contractors would not realize the potential danger of asbestos and protect against it. Therefore, Plaintiff cannot meet the three *Gutteridge* prongs necessary to establish that Ohio Edison owed or breached a duty to the Plaintiff's decedent.

Further, neither the "superior knowledge" nor the "peculiar risk" exceptions to the general rule of non-liability of a possessor of land for injury to an employee of an independent contractor is applicable here.  There is no evidence that Ohio Edison had knowledge superior to that of the Plaintiff's decedent, his employers, or union regarding the hazards of asbestos, or that any work site risk was "peculiar," i.e., different from the usual and ordinary risks associated with the work performed by the decedent.  Lacking such evidence, there is no material issue of fact

regarding Ohio Edison's non-liability for injuries to employees of its independent contractor, including Plaintiff's decedent, for failure to prevent or warn of the potential dangers inherent in work that the independent contractors were hired to perform.

Finally, Plaintiff has failed to produce any evidence that Ohio Edison manufactured or sold any asbestos-containing products to which the decedent was exposed.  As such, there can be no issue of fact to dispute that Ohio Edison is not a "product defendant," and therefore, it cannot be liable under the general negligence claim or the strict product liability claim based on the provision of a product.

Respectfully submitted,

ZIMMER KUNZ, PLLC

By: */s/ Alexander P. Bicket*

ALEXANDER P. BICKET, ESQUIRE
Pa. I.D. # 53428
3300 U.S. Steel Tower
Pittsburgh, PA 15219
412-281-8000
Attorneys for Defendant:
OHIO EDISON COMPANY

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the forgoing MOTION FOR SUMMARY JUDGMENT AND

BRIEF IN SUPPORT was filed electronically this 15TH day of January, 2010 and is available

for downloading and viewing from the ECF System.  Parties are being served electronically.

ZIMMER KUNZ, PLLC

BY  _/s/ Alexander P. Bicket_
     ALEXANDER P. BICKET, ESQUIRE

825505
6115.0091

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE:  ASBESTOS PRODUCTS | ) | MDL DOCKET NO. MDL 875 |
| LIABILITY LITIGATION (No. VI) | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO | ) | |
| | ) | |

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL J. LINDEMANN, Administrator of | ) | E.D. Pa. No. 2:07-cv-63080-JG |
| the Estate of GEORGE W. LINDEMANN, | ) | |
| Deceased, | ) | |
| | ) | |
| Plaintiff, | ) | Transferor District Court: |
| | ) | W.D. Pa. 06-0024 |
| v. | ) | |
| | ) | |
| FOSTER-WHEELER CORPORATION, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>ORDER OF COURT</u>

NOW, this _____ day of _____, 2010, Summary Judgment is

GRANTED in favor of Defendant, Ohio Edison Company.

BY THE COURT,

_____
Presiding Judge Eduardo C. Robreno